**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| TODD WHITE, | * | |
| Plaintiff, | * | Civil Action No: 20-cv-00173-GLR |
| vs. | * | |
| ACELL, INC., | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**JOINT FINAL PRETRIAL ORDER**</u>

Pursuant to this Court's Trial Scheduling Order (ECF 67) and Local Rule 106, the parties by and through undersigned counsel, hereby submit the following Joint Final Pretrial Order. Plaintiff and Defendant each reserve the right to modify this submission as appropriate.

**1. <u>Plaintiff's Statement of Facts and Legal Theories</u>**

**1) <u>Summary of Facts Plaintiff Will Prove at Trial</u>**

This case arises out of Defendant, ACell, Inc.'s (hereinafter "ACell"), retaliatory termination of Plaintiff, Todd White's (hereinafter "White") employment in violation of the False Claims Act, 31 U.S.C. § 3730(h).

Prior to termination of his employment on February 22, 2018, White was a territory manager with the company. In that role, he was responsible for selling ACell's medical devices, specifically its MatriStem surgical grafts and powders, to hospitals and health systems in Michigan and Northeast Ohio, for use by vascular, colorectal, plastic and general surgeons.

ACell has never had FDA 510(k) clearance for use of MatriStem devices on fistulas, third degree burns, pediatrics and tendon wraps. On January 18, 2018, White, via his attorney Ben

Gonek's letter (the "Gonek letter") to ACell's Deputy General Counsel, Salman Elmi, reported that he had photographs of his manager, Anthony Bonacorso ("Bonacorso"), presenting at a meeting of various employees of ACell and encouraging off brand/label marketing.. The photographs show Bonacorso in front of slides from a power-point presentation that he prepared, setting forth discussion topics for off-label uses, such as fistulas and tendon wraps.

On January 31, 2018, White discussed Bonacorso photographs with ACell's Chief Risk and Compliance Officer, William Hrubes.  During that conversation, White reported that Bonacorso encouraged sales representatives to take photographs of patients for marketing purposes without authorization from the patient or hospital.  White informed Hrubes that he had a myriad of such photographs disseminated by Bonacorso.

Unknown to White at the time of the Gonek letter, Bonacorso had a secret digital file folder on dropbox.com that contained unapproved, off-label and misbranded marketing materials, and the unauthorized photographs of patients (hereinafter "the Dropbox Folder").  The unlawful contents and purposes of the Dropbox Folder have already been verified by sworn testimony provided by former dropbox members, Charles Diggins and Matthews Vara.

In addition, at the time of the Gonek letter, ACell was a defendant in a sealed FCA *qui tam* lawsuit in federal district court brought by the United States Department of Justice in this Court, *United States ex rel. v Murtuagh,* Case No.13-cv-01820-ELH.  Portions of the case, including the Complaint, were later unsealed.  The allegations in the *Murtaugh qui tam* action included misbranding and off-label marketing.

On February 8, 2018, outside counsel, Melissa Tearney, who, unbeknownst to White, was also serving as defense counsel on the Murtaugh *qui tam* action, sent a letter to Gonek proposing a meeting on February 22, 2018 or February 23, 2018, to obtain the photographs and information

related to the unlawful activity reported by White.  On February 20, 2018, a colleague of Ms. Tearney, Emily Hodge, left a voicemail message for Gonek, asking for White's availability for a date and time to interview White regarding his allegations of off-label marketing and HIPAA violations.  Just two (2) days later, before any meeting or interview (and even before one of Tearney's initial proffered dates of February 23rd), White was fired via telephone call with his region manager, Mike Snyder, and human resources director, Eileen Smith, neither of whom provided any reason.

### 2) Plaintiff's Legal Theories

White's cause of action is based on the non-retaliation whistleblower provision of the False Claims Act, 31 U.S.C. § 3730(h), which states as follows:

**(h)     RELIEF FROM RETALIATORY ACTIONS.--**

**(1)     IN GENERAL.--**
Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

**(2)     RELIEF--**
Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

**(3)     LIMITATION ON BRINGING CIVIL ACTION--**
A civil action under this subsection may not be brought more than 3 years after the date when the retaliation occurred.

A prima facie case of retaliation under the FCA requires a plaintiff to establish that (1) he took action "in furtherance" of a *qui tam* suit, *i.e.,* engaged in "protected activity," (2) his employer knew of this action, and (3) his employer retaliated against her as a result of his actions. *U.S. ex rel. Parks v. Alpharma Inc.*, CIV.A. RDB-06-2411, 2011 WL 1366491, at 5 (D. Md. Apr. 11, 2011), *aff'd,* 493 Fed. Appx. 380, 34 IER Cases 347, Med & Med GD (CCH) P 304100, 2012 WL 3291705 (4th Cir. 2012) *Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861, 866 (4th Cir.1999)(rev'd on other grounds) (quoting *Zahodnick,* 135 F.3d at 914). See also *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200, 2018 IER Cases 477798, 2018 WL 6786134 (4th Cir. 2018), *ref. Iqbal,* 556 U.S. 662, 678 (2009) and *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 433 (4th Cir. 2015).   Retaliation claims can be proven by either the submission of direct evidence of retaliatory animus or by use of the *McDonnell Douglas* burden-shifting framework. *Foster,* supra at 249.

The first element "to stop 1 or more violations of [the FCA]" is determined by applying an "objective reasonableness" standard. *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 201 (4th Cir. 2018).  Pursuant to this standard, an act constitutes protected activity where it is motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA. *Id*.  A belief is objectively reasonable when the plaintiff alleges facts sufficient to show that he believed his employer was violating the FCA, that this belief was reasonable, that he took action based on that belief, and that his actions were designed to stop one or more violations of the FCA. *Id.* at 201-202.  However, while the plaintiff's actions need not "lead to a viable FCA action" as required under the distinct possibility standard, they must still have a nexus to an FCA violation. *Id*. at 202.  See also *Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861, 868 (4th Cir.1999)("If an employee's actions, as alleged in the complaint, are sufficient to support a

reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h).")

At trial, White will present evidence to satisfy all three (3) elements.  As to the first element, White had an objectively reasonable belief that his actions were designed to stop ACell's off-label marketing of its MatriStem products.  In support thereof, White will testify as to his concerns with Bonacorso and ACell's selling practices to prove that he reasonably believed ACell was violating the FCA, that he took action based on that belief, and that his actions were designed to stop the off-label marketing of ACell's MatriStem products.  He will also offer photographs of Bonacorso from a sales training in front of a PowerPoint presentation containing off-label uses, as well as text messages with Bonacorso and other team members relative to off-label marketing practices.  In addition, in the Fall of 2017, ACell investigated complaints received by its vendor, Lighthouse Services, Inc., concerning off-label promotion of MatriStem products by Bonacorso.  As part of that investigation, Chris Branch and William Hrubes met with White in September, 2017.  Thus, in January, 2018, when White reported, via the Gonek letter, that he had the photographs of Bonacorso, White had an additional reason to believe that Bonacorso and ACell were violating the FCA, given his meeting with Branch and Hrubes concerning off-label promotion that occurred just a few months earlier.

As to the second element, it is undisputed that ACell knew of the protected action.   In this regard, in its Responses to Plaintiff's First Requests for Admissions, ACell admitted that it received the Gonek letter.

With regard to the final element of causation, White will present testimony and documentary evidence to establish temporal proximity, retaliatory animus, retaliatory motive and

other retaliatory acts that preceded his termination.  In this regard, White has substantial evidence including the following: (i) Bonacorso's retaliatory animus evidenced by Bonacorso warning sales representatives that White was coming for him and to lie if contacted by compliance; (ii) Bonacorso's retaliatory motive relative to the Dropbox Folder of unlawful marketing presentations in his possession; (iii) the temporal proximity between the Gonek letter and White's termination; (iv) the termination of White's employment before its outside legal counsel's investigation was complete; (v) ACell's retaliatory motive relative to the Murtaugh *qui tam* action; and (vi) the additional retaliatory acts that preceded White's firing (these acts include taking his ipad and preventing him from attending the National Sales Meeting).[1]

In addition, ACell's proffered defense that the company had purportedly already decided to terminate White at the time of the protected activity is baseless and not supported by the record. Importantly, there is no document in writing of any kind (e-mail, text message, memorandum) in support thereof.  There is no date on which this purported decision to terminate White's employment was reached.  Further, it was never communicated to White.

Lastly, while ACell contends it "paused" White's termination to allow for an investigation of White's claims, that contention is undermined by the fact that ACell terminated White before the investigation was complete.  The evidence in the record establishes that White was fired during the pendency of ACell's investigation.  In fact, at the time of White's termination on February 22, 2018, at the request of ACell's counsel, a meeting was in the process of being scheduled between White, Gonek and ACell's outside counsel, to review the photographs and discuss the substance of White's claims.  White was fired before the meeting took place.

---

[1]  A more detailed, but still non-exhaustive, summary of the relevant facts is set forth in the legal memorandum submitted by Plaintiff in opposition to Defendant's Motion for Summary Judgment (Dkt. No. 59 – Unsealed Response to MSJ).

b.    **Defendant's Statement of Facts and Legal Theories**[2]

Plaintiff alleges that he was discharged on February 22, 2018 because of his report of alleged off-label marketing to ACell on January 18, 2018, in violation of the False Claims Act.  To the contrary, the decision to discharge Plaintiff was due to his own misconduct and poor performance, not his report.  His discharge was forewarned in the performance improvement plan he received prior to his report.  Further, the decision to terminate Plaintiff's employment pre-dated his report.

1.    **Plaintiff's Employment With ACell, Inc.**

Plaintiff worked for Defendant, ACell, Inc. from 2013 to February 22, 2018 as a sales representative – known as a Territory Manager – in the Detroit Michigan area.  He visited hospitals in his territory to promote the use of ACell products with hospital and customer representatives. An essential part of Plaintiff's job as a Territory Manager was also attending surgeries that utilized ACell products at these sites.  Territory Managers, including Plaintiff, were evaluated primarily based upon their sales activities and performance.   During most of his employment and through his discharge, Plaintiff reported to Area Manager Tony Bonacorso and Regional Manager Mike Snyder.

During Plaintiff's employment, ACell maintained a Standards of Business Ethics & Conduct Policy ("Business Ethics Policy") updated in 2016 and effective through the end of Plaintiff's employment which stated that ACell will not tolerate retaliation against any employee or other person who in good faith reports a known or suspected violation of the law, these Standards, or Company Policies and Procedures.

---

[2] Defendant objects to Plaintiff's inclusion of facts in his statement of facts that are the subject of pending Motions in Limine. Defendant requests that if the Motions in Limine are granted that such facts be stricken from the Order.

ACell expected Territory Managers, including Plaintiff, to meet monthly, quarterly and annual sales goals.  While sales may fluctuate, Territory Managers were expected to continuously hit the numbers, and not just squeak by to just meet their monthly, quarterly or annual goals.  In other words, management's expectation is that every month, every quarter, every year, Territory Managers surpass their sales goals.

### 2.    Plaintiff Failed To Consistently Meet His Sales Goals

Plaintiff, however, consistently failed to meet his goals.  He failed to meet his annual goal every year of his employment except one (2016).  He never met his quarterly goal more than twice in a year, usually meeting it only once, and, more often than not, he failed to meet his monthly goals.  His manager, Mr. Bonacorso, documented issues with Plaintiff's performance beginning in 2016 that concerned Mr. Bonacorso, including that he was not responsive to feedback and coaching.

Between January 2017 and his termination in January 2018, Plaintiff only met his monthly sales goal four times. This was contrary to the expectations of his supervisor Mr. Bonacorso.

In addition to management concerns regarding his sales, Plaintiff had conduct issues.

### 3.    Plaintiff Was Banned From Two Hospital Systems For His Conduct.

Significantly, on January 5, 2017, Plaintiff was accused by ACell customer, Henry Ford Health System, of throwing his shoe at a hospital employee at the Henry Ford Wyandotte location. The location had a policy requiring sales representatives that visit the hospital to offer personal collateral to use hospital scrubs, specifically car keys or a driver's license.  Plaintiff admits he refused to offer this collateral and instead offered his shoes, which the hospital representative did not like.

As a result of the incident, Plaintiff was temporarily, then permanently banned by the customer from Henry Ford Health System. As a result of Plaintiff's actions and Henry Ford Health System's decision to ban Plaintiff, ACell was forced to remove Henry Ford Health System from Plaintiff's responsible accounts.

Six months later, Plaintiff was banned by a second customer for his conduct. On October 31, 2017, Plaintiff had another altercation with another customer representative, this time in the operating room while a patient was undergoing an operation at the Farmington location of the Beaumont Health System. Plaintiff was accused of recording a hospital administrator without their permission. He called Mr. Bonacorso during the incident and Mr. Bonacorso could hear Plaintiff screaming at the hospital representative, which confirmed to Mr. Bonacorso that Plaintiff was acting inappropriately at the customer site. The next day, Mr. White tried to enter another Beaumont Health System hospital location in Dearborn, but could not enter because his hospital system access was denied, which he confirmed to Mr. Bonacorso via text. As a result of Plaintiff's system-wide ban by Beaumont, ACell had to transfer the Beaumont Health System accounts that Plaintiff serviced to another representative.

**4.     Due To His Conduct And Inconsistent Sales, Plaintiff Was Placed On A Performance Improvement Plan Which Tasked Him With Meeting His Sales Goals Through January 2018.**

As a result of this second customer ban, on November 2, 2017, Mike Snyder and Tony Bonacorso issued Plaintiff a performance improvement plan ("PIP"). The PIP outlined specific changes for Plaintiff to make to his performance and the results he was expected to achieve within 90 days. The PIP ultimately required him to increase his sales to meet his sales goals stating: "meet or exceed your annual goal" and "the goal is to hit your quota monthly." The PIP was clear

that: "If your performance does not improve to the required levels or you do not demonstrate efforts to reach these levels, your employment may be terminated during or at the end of this period."

**5.      Plaintiff Failed To Meet The Goals Of The Performance Improvement Plan And His Discharge Was Planned For The End Of January 2018.**

Plaintiff did not meet these requirements - Plaintiff did not meet his November 2017 monthly goal (short by more than 50%), his December 2017 monthly goal (short by more than 75%), his fourth quarter goal (short by 45%) or his 2017 annual goal (short by more than $75,000). In January 2018, he met only 30% of his sales goal and in February he sold only approximately $1100 worth of product, meeting only 3% of his sales goal.

In early January 2018, Mr. Snyder made the decision to terminate Plaintiff's employment, with input from Tony Bonacorso.  This decision was made **before** any complaint by Plaintiff. Mr. Bonacorso was also involved in the decision.  The decision was made in early January once it was clear that Plaintiff's sales performance was not improving on the PIP.  Effectuating that decision was paused, however, once Plaintiff sent a letter from his attorney to ACell's counsel on January 18, 2018.

**6.      Plaintiff's Discharge Was Paused While ACell Investigated A Report He Made Concerning Off-Label Marketing.**

On January 18, 2018, Plaintiff, through counsel, sent a letter to ACell's in-house counsel. (Exhibit 12.)  The letter stated that Plaintiff had:

> came across a photograph taken several years ago showing Mr. Bonacorso conducting a meeting of various employees of ACell where Mr. Bonacorso was encouraging off-brand marketing, which is the subject of a Department of Justice Investigation. As such, pursuant to ACell's compliance procedures, Mr. White is under an obligation to report this and give copies of the photographs supporting Mr. Bonacorso's conduct.  Mr. White believes reporting Mr. Bonacorso's conduct will make his current untenable situation even worse.

William Hrubes, Chief Compliance Officer, led the investigation into Plaintiff's allegations. While the investigation was undertaken, the decision to terminate Plaintiff's employment at the end of January 2018 was paused and his PIP was extended.   ACell expected employees to both report these types of concerns and cooperate in the investigation.   Mr. Hrubes met with Plaintiff on January 30 to learn more about his complaint and obtain copies of the photos that Plaintiff said he had, but Plaintiff was uncooperative:

- Mr. Hrubes wrote Plaintiff an email after his first meeting with Plaintiff on January 30, 2018 asking Plaintiff to send copies of "the photos you mentioned during the call" to Mr. Hrubes' "attention immediately."   Mr. Hrubes impressed upon Plaintiff the need for Mr. Hrubes to see the photos so that Mr. Hrubes could conduct his investigation into when the photos were taken, what they showed and who was in the photos in order to determine if ACell's policies were violated.

- At one point, Plaintiff stated to Mr. Hrubes that if ACell "paid him a lot of money" he would provide the photographs.

- By February 2, 2018, Mr. Hrubes had not received the photos and followed-up with Plaintiff to schedule an in-person meeting.

- Having received no response regarding a potential meeting date and time, on February 8, 2018 ACell's counsel followed-up with Plaintiff's counsel to ask Mr. White to produced the photographs, as requested.

- On February 20, 2018, ACell's counsel called Plaintiff's counsel, again requesting a meeting, but without response.

Following Plaintiff's continued and sustained unresponsiveness, ACell moved forward with the previously planned termination of Plaintiff's employment due to his poor performance and misconduct.

### 8.   Plaintiff's Discharge Was Consistent With Its Discipline Of Other Territory Managers Who Did Not Report Off-Label Marketing And Had Poor Sales Or Conduct Issues

Tony Bonacorso and Mr. Snyder have placed other Territory Managers on PIPs for poor sales and misconduct, including Charles Diggins.  Mr. Diggins testified that he was expected to meet his assigned sales goals on a PIP though he lost a "big account".  After his placement on a PIP by Mr. Bonacorso for poor sales in 2019, Mr. Diggins understood that he was going to be discharged if he did not meet his sales goals during the PIP.  Mr. Diggins did not meet his sales goals during the PIP and voluntarily resigned before the end of the PIP to avoid certain discharge.

Mr. Bonacorso and/or Mr. Snyder have also discharged Territory Managers for poor sales performance and misconduct, including: Frank Werner, Anthony Frambes, Charles Ritley and William Anders.  Mike Snyder was involved in discharging Mr. Werner and Mr. Frambes.  None of these individuals (Charles Diggins, Frank Werner, Anthony Frambes, Charles Ritley and William Anders) ever complained to ACell's compliance department of a violation of ACell's Business Ethics Policy.

### 9.   Defendant's Legal Theories In Support Of Affirmative Defenses.

Plaintiff will not be able to prove a *prima facie* case of retaliation because he cannot establish causation.  He also will not be able to prove that but for his report in the January 18, 2018 letter he would not have been terminated for a few reasons. First, the decision to terminate his employment occurred before his alleged complaint.  Further, before his report he was warned in November 2017 that if he did not meet the goals of his performance improvement plan he would be discharged.  He then did not meet the goals of his PIP, including in November and December

2017 – before his report – and then in January 2018 and February 2018.  Any inference presented by Plaintiff of causation that might arise from the temporal proximity between his report and his date of discharge is rebutted by these pre-report, independent facts.  Moreover, after his report, Plaintiff's PIP was extended, negating any inference that it triggered his discharge.  Additionally, as detailed above, others similarly situated to Plaintiff, but who did not make a report, were treated similarly by the same decision-makers.

ACell is advancing the affirmative defense that Mr. White has failed to mitigate his alleged lost wages.  Mr. White has not obtained reemployment since his discharge four and a half years ago.  ACell's vocational expert will offer evidence that substantially equivalent work was available and Plaintiff did not exercise reasonable diligence to obtain it.  If he had, Plaintiff would have obtained comparable employment within months of his discharge, pursuant to Ms. Wexler's expert analysis.  Mr. White also admittedly stopped looking for work in March 2020 and has not resumed serious job searching since that time.  Accordingly, he is limited in his recovery of lost wages and liquidated damages.   In any event, recoverable lost wages cease as of the date that ACell was sold in January 2021.

ACell also denies that Plaintiff has suffered any emotional distress for which he could recover damages or that ACell acted willfully, with malice or reckless disregard to justify an award of two times the amount of back pay.

**c.      Counter, Cross or Third-Party Claims**

None.

**d.      Amendments**

The subject Complaint will be redacted as to the dismissed counts.

**e.      Issues in Pleadings to be Abandoned**

Counts II, III, IV, V were dismissed at summary judgment and without waiving any appellate rights, Plaintiff agrees that those claims will not be pursued at trial.

**f.    Proposed Stipulations of Fact**

    **(i)    Joint proposed stipulations of fact:**

    **a.**    On January 18, 2018, ACell received White's attorney, Ben Gonek's, letter to Salman Elmi, Deputy General Counsel.

    **b.**    On February 8, 2018, outside counsel, Melissa Tearney, sent a letter to Gonek proposing a meeting on February 22, 2018 or February 23, 2018, to obtain the photographs and information related to the activity reported by White.

    **c.**    On February 20, 2018, ACell's outside counsel left a voicemail message for Gonek, asking for White's availability for a date and time to interview White.

    **d.**    On February 22, 2018, ACell terminated White's employment.

    **(ii)    Plaintiff's proposed stipulations of fact:**

    **a.**    On September 16, 2013, Plaintiff, Todd White ("White"), was hired as a Territory Manager with Defendant, ACell, Inc.

    **b.**    ACell has never had FDA 510(k) clearance for use on fistulas, tendon wraps or third-degree burns.

    **c.**    Nick Paoletti was not placed on a performance improvement plan even though he was banned from selling ACell products to the University of Pittsburgh Health System.

    **d.**    Tony Bonacorso was not placed on a performance improvement plan even though he was banned from selling ACell products to the University of Pittsburgh Health System.

    **e.**    ACell became aware after this litigation commenced that Bonacorso had a dropbox storage that contained various documents.

    **f.**    ACell investigated communications received to its Lighthouse Services, Inc. vendor regarding Tony Bonacorso in 2017, and, as part of that investigation Chris Branch and Bill Hrubes met with sales representatives, including Plaintiff.

    **g.**    On January 31, 2018, ACell extended White's Performance Improvement Plan 60 days.

    **h.**    Promotion of medical devices for off-label uses is a violation of the False Claims Act.

**(iii) Defendant's proposed stipulations of fact:**

 **a.** Plaintiff was an at-will employee at all times during his employment with ACell.

 **b.** Plaintiff failed to meet his annual sales goal every year of his employment except one (2016).

 **c.** Plaintiff was accused by Henry Ford Health System of throwing his shoe at a hospital employee at the Henry Ford Wyandotte location on January 5, 2017.

 **d.** Plaintiff was temporarily suspended as a vendor representative from Henry Ford Health System on January 5, 2017.

 **e.** Plaintiff was permanently suspended as a vendor representative to Henry Ford Health System on March 29, 2017.

 **f.** Plaintiff was accused by Beaumont Health System of recording a health system representative without their permission on October 31, 2017.

 **g.** Plaintiff was suspended as a vendor representative from Beaumont Health System as of November 1, 2017.

 **h.** On November 2, 2017 Plaintiff was placed on a performance improvement plan by Mike Snyder and Tony Bonacorso.

 **i.** While on the performance improvement plan, Plaintiff did not meet his November 2017 monthly sales goal (short by more than 50%), his December 2017 monthly sales goal (short by more than 75%), his fourth quarter sales goal (short by 45%) or his 2017 annual sales goal (short by more than $75,000).

 **j.** In January 2018, Plaintiff met only 30% of his sales goal and in February he sold only approximately $1100 worth of product, meeting only 3% of his sales goal.

15

      **k.**      During his employment with ACell, Plaintiff never provided the photos he claimed to have of Tony Bonacorso in the January 18, 2018 letter.

**g.**      <u>**Damages**</u>

      **(i)  Plaintiff's damages:**

Plaintiff is seeking double back pay, future pay in lieu of reinstatement (or reinstatement), special damages, attorney fees and expenses, pursuant to 31 U.S.C. § 3730(h)(1).

Plaintiff will offer his economic damages pursuant to the testimony of his expert economist, Michael N. Kahaian, who has authored a report dated November 25, 2021, opining as to economic damages as follows:

| | |
|---|---|
| Double Back Pay: | $914,796[3] |
| Future Pay: | $405,025 |

Plaintiff will also present evidence of his special or non-economic damages, including but not limited to emotional distress. The Fourth Circuit, consistent with every other circuit, has held that the special damages contemplated in 31 U.S.C. § 3730(h)(1) include emotional distress damages.  ("Every federal circuit court to have addressed the issue has concluded that the False Claims Act 'affords noneconomic compensatory damages.'" *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 672 (4th Cir. 2015) (citing *Halliburton,* 771 F.3d at 265; *see Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.,* 277 F.3d 936, 944 (7th Cir.2002) (stating that the allowance for special damages in 31 U.S.C. § 3730(h) "permits recovery for emotional distress"); *Hammond v. Northland Counseling Ctr, Inc.,* 218 F.3d 886, 892–93 (8th Cir.2000)).

---

[3] As of 11.15.21

If the jury returns a favorable verdict, Plaintiff is also entitled to attorney fees and expenses pursuant to 31 U.S.C. § 3730(h)(1).

**(ii)    Defendant's defenses:**

As detailed above, Defendant denies that Plaintiff is entitled to recover any damages under the False Claims Act.

**h.    Exhibits**

**Exhibit A –** Joint Trial Exhibit List

**Exhibit B –** Plaintiff's Exhibit List

**Exhibit C** – Defendant's Exhibit List

The parties agree that they may revise or supplement the above exhibit lists, as necessary, prior to trial.

**i.    Witnesses**

**(i)    Plaintiff's witnesses:**

***Expects to call:***

1. Plaintiff, Todd White, c/o Chrisdon Rossi, Esq.
2. Charles Diggins, 1115 Rowley Ave., Cleveland, OH 44109
3. Matthew Vara, 523 S. Third Street, Columbia, OH 43215
4. Dr. David J. Fertel, 6149 N. Wayne Road, Westland, MI 48185
5. Dr. Shawn M. Dowling, 18101 Oakwood Blvd., Dearborn, MI 48124
6. Zachary Bridges
7. Arjun Ishwar
8. Tony Bonacorso (adverse witness), c/o ACell, Inc.
9. Mike Snyder (adverse witness), c/o ACell, Inc.
10. Eileen Smith (adverse witness), c/o ACell, Inc.
11. William Hrubes (adverse witness), c/o ACell, Inc
12. Nicholas Paoletti
13. All persons needed to authenticate documents and/or records

***May call:***

14. Tyler Shackelford
15. Salman Elmi (adverse witness)
16. Andrea Kibbalo (adverse witness)
17. David Shay – potential rebuttal witness on mitigation

18. Rebecca Underwood
19. Christine Tucker
20. Donald E. English, Jr., Esq. – limited to Shackelford lawsuit
21. Any and all necessary rebuttal witnesses
22. Plaintiff reserves to add or remove witnesses up to the time of trial

**(ii)    Defendant's witnesses:**

*Expects to call:*

1. Tony Bonacorso, c/o Kathleen McGinley, Jackson Lewis, P.C., 2800 Quarry Lake Drive, Suite 200, Baltimore MD 21209, 410-415-2085
2. Mike Snyder, c/o Kathleen McGinley, Jackson Lewis, P.C., 2800 Quarry Lake Drive, Suite 200, Baltimore MD 21209, 410-415-2085
3. Eileen Smith, c/o Kathleen McGinley, Jackson Lewis, P.C., 2800 Quarry Lake Drive, Suite 200, Baltimore MD 21209, 410-415-2085
4. William Hrubes, c/o Kathleen McGinley, Jackson Lewis, P.C., 2800 Quarry Lake Drive, Suite 200, Baltimore MD 21209, 410-415-2085
5. Nicholas Paoletti
6. Joe Siebert
7. Andrea Kibbalo

*May Call:*

1. Bill Scanlon
2. Steven Witkowski

**j.    Expert Witnesses**

**(i)  Plaintiff's expert witness:**

1. Michael Kahaian, Expert, Economics and Damages
   Accurity Group, LLC, Atlanta, GA (404) 295-7553

**(ii)  Defendant's expert witnesses:**

1. Rona Wexler
   Wexler Vocational and Career Consulting LLC
   1900 Riverside Dr. W, Suite 6C
   New York, NY 10032

2. Chad Staller
   The Center For Forensic Economic Studies
   1608 Walnut Street, Suite 801
   Philadelphia, PA 19103

**k.    Deposition Testimony to be Offered Per Rule 32(A)(4)**

*Plaintiff's Designations*

1. Christine Tucker
   a. 24:8-15
   b. 30:24-31:18
   c. 37:14-38:5
   d. 50:12-17
   e. 51:5-12
   f. 55:19-56:1

2. Arjun Ishwar
   8:8-9-6
   18:14-20:3
   25:3-8
   28:17-29:10
   55:18-7
   61:2-62:2

Plaintiff objects Defendant's use of the depositions in this fashion as to Matt Vara and Todd White per 32(A)(4), which contemplates offering the deposition when a witness is not available.

*Defendant's Designations*

1. Matt Vara
   a. 45:6-21
   b. 43:3-9
   c. 49:7-13
   d. 40:11-17
   e. 40:22-24
   f. 42:24-43:2

2. Christine Tucker
   a. 16:16-17:4
   b. 17:17-21
   c. 64:3-10

3. Todd White
   a. 8:10-12
   b. 9:12-14
   c. 15:7-16
   d. 34:12-19

e.  35:3-10
f.  39:7-9
g.  125:7-126:3
h.  150:4-16
i.  150:21-151:2
j.  151:20-151:2
k.  152:17-153:4
l.  157:16-18
m.  163:15-164:9
n.  164:14-19
o.  208:3-6
p.  208:14-16
q.  286:7-9
r.  286:13-21
s.  292:5-14
t.  292:18-293:3
u.  293:8-12
v.  295:11-21
w.  342:6-9
x.  375:12-20
y.  408:18-409:9
z.  412:11-18
aa. 413:1-17
bb. 414:4-21
cc. 415:14-418:13
dd. 419:19-421:8
ee. 421:18-422:3
ff.  430:5-432:6
gg. 434:16-435:10
hh. 436:9-437:11
ii.  442:9-12
jj.  446:6-449:6
kk. 449:19-450:3
ll.  450:10-451:13
mm.  453:11-454:21
nn. 455:1-456:20
oo. 457:12-18
pp. 458:19-459:10
qq. 459:15-21

l.     **Pending Motions in Limine**

(i)     **Plaintiff has the following pending motions *in limine*:**

a.     to disqualify and exclude Rona Wexler and Chad Staller from testifying at trial as expert witnesses for Defendant, ACell, Inc.;

b.     to exclude from evidence the job postings that Rona Wexler obtained from an electronic database maintained by Gartner Talent Neuron;

c.     to exclude any evidence relative to Plaintiff's prior lawsuits against Baxter Healthcare Corp.; and

d.     to sequester non-party witnesses.

**(i)     Defendant has the following pending motions *in limine*:**

a.     to exclude evidence related to White's dismissed claims;

b.     to exclude evidence related to the findings and conclusions of the DOJ investigation;

c.     to exclude evidence related to anonymous Lighthouse complaints about Bonacorso;

d.     to exclude the photographs White claimed to have of Bonacorso engaging in off-label marketing but that he never produced to ACell prior to his termination;

e.     to exclude evidence about the allegedly "secret" Dropbox;

f.     to exclude evidence about Bonacorso being banned from a health system;

g.     to exclude evidence about White's restrictive covenants;

h.     to exclude evidence about ACell's lawsuit against Tyler Shackelford;

i.     to exclude Michael Kahaian from testifying about the diligence of White's job search efforts for lack of qualifications;

j.     to exclude Michael Kahaian from testifying about future damages.

Respectfully submitted,

   /s/
Michael J. Levin, Esq. (Bar No. 19802)
SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC
201 North Charles Street
Suite 2600
Baltimore, Maryland 21201
Tel.: (410) 385-2225
Fax: (410) 547-2432
mlevin@silvermanthompson.com


   /s/
Chrisdon F. Rossi, Esq. (Mich. Bar No. P59305)
Admitted *Pro Hac Vice*
THE ROSSI LAW FIRM, PLLC
40950 Woodward
Suite 306
Bloomfield Hills, Michigan 48304
Tel.: (248) 593-9292
Fax: (248) 686-3360
crossi@rossilawpllc.com

*Attorneys for Plaintiff, Todd White*

*\*Signed by Kathleen McGinley with the permission of Attorneys for Plaintiff.*

4891-9141-5086, v. 10

   /s/
Donald E. English, Jr. (Federal Bar No. 27534)
Kathleen A. McGinley (Federal Bar No. 29150)
Liane D. Kozik (Federal Bar No. 21336)
JACKSON LEWIS P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, MD  21209
(410) 415-2007 – Telephone
(410) 415-2001 – Facsimile
Donald.English@jacksonlewis.com
Kathleen.McGinley@jacksonlewis.com
Liane.Kozik@jacksonlewis.com

*Attorneys for Defendant, ACell, Inc.*